IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SAMUEL LAZAR,<br><br>        Defendant. | Case No: 21-cr-525-ABJ |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE
PRESS COALITION'S APPLICATION FOR ACCESS TO VIDEO EXHIBITS**

The Press Coalition respectfully submits this reply memorandum in further support of its Application for access to two video recordings that the Government submitted to this Court in this matter (the "Video Exhibits"). The Government has stated that (1) it submitted the Video Exhibits to the Court during Defendant's detention hearing; (2) neither party asked the Court to seal the Video Exhibits; and (3) the Video Exhibits "were used in this Court's decision on detention." Resp. to Minute Order Regarding Video Exhibit Release at 1-2 ("Gov't Resp."), Dkt. 19. The Government thus agrees that the Court should grant the Application. *Id.*

Defendant Samuel Lazar objects to the release of one video obtained from an officer's body-worn camera ("BWC"), however, but he does not – and cannot – identify any facts distinguishing this case from the many others in which the Press Coalition's requests for video exhibits have been granted, including cases where other Capitol riot defendants have raised objections similar to those Lazar makes here as to the BWC video exhibit.[1] *See* Def.'s Resp. to

---

[1] To date, the Press Coalition has received access to, and permission to republish, <u>almost all videos</u> submitted as exhibits or shown at a detention hearing, and <u>50 BWC videos</u> have been released to the Coalition. *See, e.g.,* Minute Order of August 8, 2021, *United States v. Gieswein*, No. 21-cr-24-EGS (releasing three BWC videos); Minute Order of July 23, 2021, *United States v. Sabol*, No. 21-cr-35-EGS-1 (releasing video exhibits, including three BWC videos); Minute Order of July 22, 2021, *United States v. Morss*, No. 21-cr-00040-TNM-5 (releasing video

Minute Order Regarding Video Exhibit Release ("Def.'s Resp."), Dkt. 21. The Court should therefore grant this Application as well and overrule Defendant's objections to public access.

---

exhibits, including six BWC videos); Minute Order of July 19, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-86-CJN (releasing four BWC video exhibits from *United States v. McKellop*, 21-cr-268-CJN); Minute Order of July 12, 2021, *United States v. Harrelson*, No. 21-cr-28-APM-10; Minute Order of July 9, 2021, *United States v. Perkins*, No. 21-cr-447-CJN-4 (releasing two BWC videos); Minute Order of July 8, 2021, *In re Press Coalition's Motion for Access to Video Exhibits*, No. 21-mc-84-EGS (releasing video exhibits from *United States v. Whitton,* 21-cr-35-EGS-5, including three BWC videos); Minute Order of July 6, 2021, *United States v. Jensen*, No. 21-cr-6-TJK-1; Minute Order of July 3, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-89-TSC (releasing five video exhibits from *United States v. Foy*, 21-cr-108-TSC-1, including one BWC video); Minute Order of July 6, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-82-ABJ (releasing one BWC video exhibit from *United States v. Sibick*, 21-cr-291-ABJ-1); Minute Order of July 2, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-74-EGS; Minute Order of June 28, 2021, *In re Application for Access to Video Exhibit*, No. 21-mc-80-TJK; Minute Order of June 25, 2021, *United States v. McHugh*, No. 21-mj-00436-GMH-1 (releasing nine BWC videos); Minute Order of June 23, 2021, *United States v. Owens*, No. 21-cr-286-BAH (releasing two BWC videos); Minute Order of June 23, 2021, *United States v. Mock*, No. 21-mj-469-RMM-1 (releasing two BWC videos); Minute Order of June 21, 2021*, In re Application for Access to Video Exhibits,* No. 21-mc-76-TJK; Minute Order of June 17, 2021*, In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-77-RCL (releasing four video exhibits submitted in *United States v. Fairlamb*, 21-cr-120-RCL-1, including one BWC video); Minute Order of June 17, 2021, *In re Application for Access to Video Exhibits*, No. 21-mc-83-APM (releasing BWC video submitted in *United States v. Webster*, 21-cr-208-APM-1); Minute Order of June 16, 2021, *In re Application for Access to Video Exhibits*, No. 21-mc-79-TNM; *see also* Mem. Op. and Order, *In re Application for Access to Video Exhibits,* No. 21-mc-75-PLF (ordering release of all video exhibits other than sealed Capitol surveillance videos the Government represented "contain sensitive information about the U.S. Capitol surveillance system").

In three cases, the Press Coalition has secured access over precisely the same objection this Defendant raises here – i.e., an objection that releasing video exhibits will prejudice the defense and taint the jury pool. Order, *United States v. James*, No. 21-cr-28-APM, Dkt. 360 (ordering release of videos submitted by the Government with a motion to reopen the defendant's detention hearing, including two BWC videos); Mem. Op., *In re Application for Access to Certain Video Exhibits* ("*In re Klein*"), No. 21-mc-78-RC, Dkt. 7 (ordering release of two BWC videos shown at defendant's detention hearing in *United States v. Klein*, No. 21-cr-236-RC); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-14 (D.D.C. Mar. 17, 2021) (ordering release of videos submitted and shown at defendant's detention hearing, including one BWC video).

All of the video exhibits released to the Press Coalition pursuant to its applications are accessible at the following link: https://projects.propublica.org/jan-6-video-evidence/.

## ARGUMENT

### I. The Video Exhibits Are Judicial Records Subject To The Public Right Of Access.

Both the Government and Defendant concede the Video Exhibits were submitted to the Court, and therefore the Court must apply the common-law test for release of judicial records to determine whether they should be released to the Coalition at its request. Def.'s Resp. at 1-2; Gov't Resp. at 1-2. Under the law of this Circuit, the Video Exhibits are judicial records subject to the public right of access under the First Amendment and common law.

### II. Defendant Fails To Overcome The Presumption Of Access To The Video Exhibits.

Because the Video Exhibits are judicial records, they are subject to the powerful presumption of public access under the First Amendment and the common law. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 12-13 (1986) (holding that First Amendment right of access applies to preliminary hearings in criminal cases); *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-14 (D.D.C. Mar. 17, 2021) (ordering release of video exhibits submitted at a detention hearing in another Capitol riot case after concluding they are judicial records subject to the "strong presumption in favor of public access" under the common law). In objecting to release of these Video Exhibits, Defendant fails to overcome the presumption of public access.

First, the Video Exhibits are subject to the First Amendment right of access, and Defendant cannot possibly show that continued secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). Indeed, the Press Coalition expressly seeks these Video Exhibits under both the First Amendment and the common law, *see* Application at 1, and Defendant never even attempts to carry the extraordinary burden required to overcome the First Amendment right of access, nor could he possibly do so.

Second, based on the D.C. Circuit's six-factor *Hubbard* test, Defendant cannot even overcome the common law right of access to these videos. Those factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).

**Factor 1:** This factor addresses "the need for public access to the documents at issue," *Hubbard*, 650 F.2d at 317-18, and contrary to Defendant's representation, it "weighs heavily in favor of public access," *see Jackson*, 2021 U.S. Dist. LEXIS 49841, at *17. These Video Exhibits would allow the public to see for themselves "the assault on the Capitol building on January 6, 2021 and this effort to disrupt the democratic process in counting electoral votes," which remains of "deep national importance and public interest both as to the offense conduct and individuals involved." *Id.* Because the Application advances the "strong public interest in seeing real-time images of what happened that day," *see In re Klein* at 7, Factor 1 of the *Hubbard* test strongly favors disclosure.

**Factor 2:** This factor considers "the extent of previous public access to the documents." *Hubbard*, 650 F.2d at 319. Defendant's counsel represents that he "is unaware of prior public disclosure of Exhibit #1." Def.'s Resp. at 2. However, the Government's motion for Defendant's detention details descriptions of Defendant's alleged conduct as shown in the Video Exhibits, as well as screenshots of body-worn camera footage fitting the description of the first Video Exhibit. *See* Gov't's Mot. for Pretrial Detention at 3-10. These screenshots and descriptions purportedly "depict defendant's most egregious conduct and therefore [have] already been made

4

publicly accessible." *Jackson*, 2021 U.S. Dist. LEXIS 49841 at *20. Factor 2 thus weighs in favor of public access as well.

**Factor 3:** This factor considers "the fact that someone has objected to disclosure." *Hubbard*, 650 F.2d at 319-22. Here, Defendant alone has objected to disclosure of one Video Exhibit, which means that Factor 3 also favors public access. *See Jackson*, 2021 U.S. Dist. LEXIS 49841 at *20; *In re Klein* at 9.[2]

**Factor 4:** This factor considers "the strength of [any] property and privacy interests asserted." *Hubbard*, 650 F.2d at 319-22. Defendant cannot assert <u>any</u> privacy interest in videos that "were captured while he was participating very publicly with a mob assaulting the Capitol." *Jackson*, 2021 U.S. Dist. LEXIS 49841, at *22; *In re Klein* at 9. Factor 4 thus favors access to the Video Exhibits.

**Factor 5:** This factor considers the "possibility of prejudice" to the party objecting to access. *Hubbard*, 650 F.2d at 319-22. Here, Defendant claims "the potential for prejudice to Mr. Lazar is great, particularly with respect to potential jurors if this case proceeds to trial," but

---

[2] Defendant represents that "typically," BWC footage "is disclosed by the government pursuant to a protective order that prevents dissemination to the press." Def.'s Resp. at 1. This is both inapposite and inaccurate based on the Press Coalition's extensive experience obtaining video exhibits submitted or shown to the Court in the Capitol riot prosecution proceedings. First, most of the protective orders entered into Capitol riot cases – which has not been entered here – explicitly state that the Government "will *not* designate as Sensitive or Highly Sensitive" the "vast amount" of BWC footage. *E.g.,* Protective Order Governing Discovery at 1 n.1, *United States v. Anderson*, No. 21-cr-215-RC, Dkt. 20 (emphasis in original). Second, judges in this District have consistently rejected this request when made by the Government, to the point that the Government stopped requesting video exhibits be released with republication restrictions. *See, e.g.,* Minute Order of June 24, 2021, *In re Application for Access to Certain Sealed Video Exhibits*, 21-mc-85-CRC (Judge Cooper rejected the Government's argument that the video exhibits should be released to the Press Coalition with republication restrictions, which was "contrary to the position the government has taken in other January 6th cases," and ordered release of exhibits, <u>including two BWC videos</u>, to the Coalition without republication restrictions. The released videos are viewable under "USA v. Egtvedt" at the following link: https://projects.propublica.org/jan-6-video-evidence/).

such a speculative and unsupported assertion carries no weight at all. *Jackson*, 2021 U.S. Dist. LEXIS 49841, at *23 (in another case concerning access to Capitol riot videos, concluding that "defendant simply [did] not specify what prejudice may result from disclosure" given "the obvious circumstance that he has been charged with serious felony violations, based on alleged offense conduct described in detail in publicly filed documents, including the criminal complaint and the government's briefs in support of pretrial detention"); Order, *United States v. James*, No. 21-cr-28-APM, Dkt. 360 (ordering release of videos over the defendant's objections because "prejudice from release is mitigated by the government's prior detailed description of the exhibits' contents and publication of still images," and defendant "does not rebut the notion that a rigorous voir dire would root out potential prejudice"); *In re Klein* at 9-10 (rejecting a Capitol riot defendant's broad claim of potential prejudice where, as here, the parties detailed what was depicted in the videos during the hearing and in filings, and screenshots of the "most egregious conduct" were included in Government filings).

Controlling D.C. Circuit precedent rejects the very type of unsupported arguments that Defendant makes here. In *In re NBC*, the D.C. Circuit held that the "right to inspect and copy" judicial records outweighed concerns that release might prejudice defendants' fair trial rights by tainting a future jury pool, because "voir dire has long been recognized as an effective method of rooting out such bias." 653 F.2d 609, 613-17 (D.C. Cir. 1981); *United States v. Thompson*, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989) ("[A] searching and carefully conducted

voir dire of potential jurors in future trials will fully protect the defendants' rights to a fair trial without unduly impairing the public's right of access.") (citations and internal marks omitted).[3]

Moreover, Defendant's involvement in the January 6 riots is well documented. *See, e.g., Wanted Lancaster County man with ties to GOP lawmaker Doug Mastriano arrested on Capitol riot charges*, The Philadelphia Inquirer (July 27, 2021), https://www.inquirer.com/news/samuel-lazar-capitol-riot-doug-mastriano-face-paint-blowhard-20210727.html; *Pennsylvania Man Arrested for Assault on Law Enforcement During Jan. 6 Capitol Breach*, Dep't of Justice (July 27, 2021), https://www.justice.gov/usao-dc/pr/pennsylvania-man-arrested-assault-law-enforcement-during-jan-6-capitol-breach-0. This previous coverage of Defendant's actions on January 6 further undermines his argument for withholding any of the Video Exhibits, as the D.C. Circuit made clear in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991). There, the Post sought access to the plea agreement of a district employee who cooperated with an investigation into Mayor Marion Barry, and the government argued that the record should remain sealed because it "was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized," because "release of the agreement may [have made] it difficult to secure the cooperation of other witnesses," and because "the safety of [the cooperator] and his family would have been placed at risk." *Id*. at 283-85, 291 (D.C. Cir. 1991) (citation, internal marks, and alterations omitted). The D.C. Circuit rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press,

---

[3] *See also United States v. Criden,* 648 F.2d 814, 827 (3d Cir. 1981) ("the appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination"); *United States v. Martoma*, 2013 U.S. Dist. LEXIS 182959, at *24 (S.D.N.Y. Dec. 28, 2013) ("Numerous courts in high-profile cases have recognized that a thorough voir dire may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.") (collecting cases).

7

meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the ongoing criminal investigation." *Id*. at 292 (emphasis added). Release of these Video Exhibits likewise does not and cannot pose any <u>additional</u> risk to Defendant, and as a result Factor 5 weighs in favor of access as well.

**Factor 6:** This factor considers the purpose for which the records were introduced, *see Hubbard*, 650 F.2d at 319-22, and here the Government submitted the Video Exhibits for the purpose of persuading the court that Defendant should be detained pending trial. That purpose tips heavily in favor of public access. *See Jackson*, 2021 U.S. Dist. LEXIS 49841, at *23 ("[T]here is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them.") (internal marks omitted).

Like all the others, therefore, Factor 6 weighs in favor of public access. In sum, the *Hubbard* test leads to the clear conclusion that the Press Coalition should receive access to the Video Exhibits without restriction and without delay.

## CONCLUSION

For the foregoing reasons and those stated in the initial Application, the Press Coalition respectfully requests that the Court enter an order (1) directing the Government to provide the Press Coalition with copies of the Video Exhibits and (2) permitting the Press Coalition to republish those Video Exhibits without restriction.

Dated: August 30, 2021

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*