UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES ) <br> ) <br> v. ) <br> ) <br> SAMUEL LAZAR ) <br>              Defendant. ) <br> ) | Criminal No. 1:21-cr-525-ABJ-1 |

## DEFENDANT'S MOTION FOR RECONSIDERATION OF PRETRIAL DETENTION AND REQUEST TO STAY DEFENDANT'S TRANSPORT TO THE DISTRICT OF COLUMBIA

Samuel Lazar, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to 18 U.S.C. § 3142, to reconsider the order of pretrial detention entered in this matter and to release him pending trial.

Mr. Lazar is before this Court charged by indictment with 1) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); 2) Civil Disorder, in violation of 18 U.S.C § 231(a)(3); 3) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. 1752(a)(1) and (b)(1)(A); 4) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and 5) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

On July 21, 2021, Mr. Lazar was arrested in this matter and held without bond at the Federal Detention Center ("FDC") Philadelphia.  On August 31, 2021, the Honorable Judge Robin Meriweather ordered Mr. Lazar be held without bond pending trial.

1

To date, some discovery has been provided; however, there remains outstanding a copious amount to be both produced and reviewed. While Mr. Lazar acknowledges the complexity of this case, he remains detained with very little information about the case against him and without any semblance of a timeframe as to when he may expect his case to move forward or go to trial.

While these factors alone are not determinative, they underscore the need for the government to identify a specific, "articulable threat" of dangerousness in order to justify preventative detention. *Munchel v. United States*¸ 991 F.3d 1273, 1283 (D.C. Cir. 2021). Under now controlling Circuit precedent, such an articulation must specifically explain why the danger exceeds the scope of the events January 6th, 2020. *Id*. The government has not done so in this case and this Court should release Mr. Lazar with conditions of supervision.

*Background*

Mr. Lazar is thirty-five (35) years old and lives with his partner in Ephrata, Pennsylvania.[1] He is highly self-motivated and supports himself through a variety of business endeavors, including buying and reselling restaurant equipment and antiques, "flipping" real estate properties, and e-commerce. Mr. Lazar also has training as a carpenter and takes on home improvement jobs to support himself and help others in his community. Mr. Lazar's criminal record is minimal - he had two misdemeanor convictions nearly twenty (20) years ago, and a misdemeanor conviction from 2016. *See Pretrial Services Report*, ECF 10.

---

[1] Mr. Lazar's partner, Autumn Hickey, has already been screened and approved by Pretrial Services as a third-party custodian for Mr. Lazar should he be released.

*Mr. Lazar's 2016 Conviction*

In the August 31, 2021, decision to keep Mr. Lazar in custody, the Court relied in part on proffers made by the Government about the facts surrounding Mr. Lazar's conviction.[2] Specifically, the Government proffered that Mr. Lazar attempted to buy a firearm at a gun show when he misrepresented his criminal history in an attempt to obtain the firearm. When that attempt was rejected, the Government proffered that Mr. Lazar attempted to get his brother to purchase the firearm for him. In fact, Mr. Lazar's conduct was considerably more straightforward and less misleading. In 2015, when the conduct occurred, Mr. Lazar went to a gun store in Millersville, Pennsylvania – not a gun show. Mr. Lazar was interested in purchasing a firearm and completed the requisite paperwork. At that time, Mr. Lazar's prior criminal matters – for which served approximately forty-five (45) days in jail – were over ten years old. He did not consider and was not aware that his prior misdemeanor convictions were relevant to his purchase of the firearm. Mr. Lazar failed to read closely the form and unintentionally misstated his record on the paperwork, ultimately resulting in the charge against him. At the time, Mr. Lazar's attempt to purchase the firearm was denied. Mr. Lazar's brother was with him at the time to purchase a different item for himself, and when Mr. Lazar's purchase request was denied, inquired if he could purchase the firearm instead. Mr. Lazar's brother was informed this would be considered a straw purchase and was not allowed. Thus, it did not occur. Mr. Lazar's brother was never charged with a crime. Mr. Lazar never attempted to have his brother purchase a firearm on his behalf.

---

[2] *See* Transcript of Continued Detention Hearing at 20, (August 31, 2021), attached as Exhibit A.

*Photographs From 2020*

In its decision to hold Mr. Lazar without bond, the Court also relied on photographs from social media submitted by the Government that depict Mr. Lazar holding what appear to be firearms or objects that look like firearms.[3] The Court referenced the Government's proffer that this conduct occurred on a public street. Again, the facts here differ from the Government's proffer. The small gathering actually took place on private property, not a public street or sidewalk. The private property is a pizzeria owned by a local businessman who hosted the individuals during that event. The street can be seen in the background of the photos, but Mr. Lazar is not actually on public property at all. Further, there is no indication anyone present was threatened or intimidated by Mr. Lazar. Nor was Mr. Lazar charged as a result of his actions on that day. He did not behave aggressively, and the incident does not suggest in any way that Mr. Lazar poses any sort of threat or danger. Any concerns the Court may have as a result of these photographs can be addressed through conditions of release.

The Court also has fifteen (15) letters from family, friends, and acquaintances, who unanimously describe Mr. Lazar as a kind, considerate, hard-working member of their community. *See* ECF 12. A child of immigrants, Mr. Lazar is a loyal friend who cares deeply about his community and his country.

As of this filing, Mr. Lazar has been in custody for nearly two (2) months, and his case stretches on with no end in sight. The Government has provided discovery in piecemeal fashion as it sorts through the massive trove of information associated with January 6. The USAO has contracted with a private company to facilitate the organization and distribution of discovery, but there is no specific timetable as to when discovery production will be complete. *See* 1:21-cr-

---

[3] *See* Exhibit A at 21-22.

378-TJK, ECF 28 (Status Report *re Discovery*).  Nearly sixty (60) days into Mr. Lazar's detention, undersigned counsel is in no position to even begin to meaningfully prepare for trial. In this context, Mr. Lazar's history as a law-abiding citizen, coupled with the lack of an articulable present or future danger to the community posed by Mr. Lazar's release, call for his release.

## ARGUMENT

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, in our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the government requests pretrial detention, specific requirements must be fulfilled before a defendant may be detained. In order to warrant an exception to this presumption of freedom, the Government is required to demonstrate the appropriateness of pretrial detention by clear and convincing evidence. 18 U.S.C. § 3142(f). Additionally, the judicial officer considering the propriety of pretrial detention must consider four factors: (1) [t]he nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The D.C. Circuit has recently expanded on the fourth factor listed above – the danger to the community – in the context of the January 6th cases. Specifically, it has held that: "[t]o order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence, and may extend to "non-physical harms such as corrupting a union. But it must be clearly identified." *Munchel v. United States*¸ 991 F.3d 1273, 1283 (D.C. Cir. 2021) (citation and internal quotations omitted).[4]

In considering the above factors, Mr. Lazar is not a danger to the community and should be released pending resolution of this matter. The allegations against Mr. Lazar stand in stark contrast to his demonstrated history of non-violence and law-abidance. He did not plan for or prepare for any sort of assault or attack on January 6. Mr. Lazar had knowledge of prior violence *against* attendees of rallies and was on alert for his own safety. To that end, Mr. Lazar's attire on January 6 was a defensive measure for his own protection. More importantly, however, he did not bring any weapons or offensive items to the Capitol. In fact, the spray Mr. Lazar is alleged to have used on January 6th was found by Mr. Lazar on the grounds of the Capitol.

Mr. Lazar did not plan or coordinate his presence at the Capitol or his alleged actions with anyone. He brought a bullhorn to project patriotic and Christian music at the rally. There is

---

[4] In *Munchel*, the Circuit did not find that the government had sufficient evidence of dangerousness where the defendants went to the January 6th rally with tactical vests, a stun gun and at least a pocketknife. *Munchel*, 991 F.3d at 1276. They met with members of the Oath Keepers militia and bragged about "enter[ing] the building with armor and f_ing weapons." *Id*. Once inside, they gathered zip ties and went to the Senate gallery. *Id*. When agents searched their home, they found firearms and a "large quantity of loaded magazines." *Id*. at 1277. By contrast, Mr. Lazar is not alleged to have brought any firearms to the Capitol. He is not alleged to have met with any militia members or even to have planned to be at the Capitol on January 6th, 2021. Moreover, he never went inside the Capitol, unlike the defendants in *Munchel*.

nothing in Mr. Lazar's past or background to suggest he is prone to violence or would pose a danger to himself or the community.

To continue Mr. Lazar's incarceration would also create inconsistencies with other January 6th defendants accused of arguably greater misconduct who were granted release. For example:

- *United States v. Richard Barnett*, 1:21-cr-38-CRC, Barnett entered the Capitol building armed with a stun gun, brazenly sat at Speaker Pelosi's desk and posed for photos. He is also alleged to have stolen an envelope from the Speaker's office. *See* ECF 3 (Amended Complaint and Statement of Facts). Barnett is charged with, *inter alia*, knowingly entering and remaining in any restricted building without lawful authority while armed with a dangerous weapon, in violation of 18 U.S.C. §1752. On April 27, 2021, the District Judge granted his motion for reconsideration of bail and ordered him released into the High Intensity Supervision Program. *Id.* at ECF 29.

- *United States v. Robert Sanford*, 1:21-cr-52-ZMF, Sanford is alleged to have hurled a fire extinguisher into a crowd of police officers and striking at least three officers in the head. Video footage allegedly captures Sanford screaming "traitors" and "cowards" at the officers. *Id. at* ECF 10 (Government's Opposition to Defendant's Motion to Reconsider Detention). Like Mr. Lazar, Sanford is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). On March 2, 2021, the District Judge granted Sanford's motion for release and placed him on GPS monitoring. *Id.* at ECF 11.

- *United States v. David Alan Blair*, 1:21-cr-86-CRC, Blair was captured on body worn camera brandishing a lacrosse stick which served as a pole for a large confederate

7

flag. *Id. at* ECF 1 (Complaint and Statement of Facts). While walking back and forth between the crowd and police officers, Blair is alleged to have exhorted, "hell naw, quit backing up, don't be scared. . .". As an officer advanced, Blair yelled at the officer: "what's up motherfucker, what's up, what's up bitch." *Id*. He then struck the officer in the chest with the lacrosse stick and had to be forcibly restrained by multiple officers *Id*. Notwithstanding this direct physical assault with a lacrosse stick, Blair was ordered released with conditions. *Id.* at ECF 6. Like Mr. Lazar, Blair is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Michael Foy*, 1:21-cr-108-TSC, Foy was captured on publicly available video brandishing a hockey stick and swinging it at an officer on the ground. *Id. at* ECF 1 (Complaint and Statement of Facts). Foy is later seen exhorting the crowd to enter the Capitol, and then crawling into the Capitol building himself through a broken window. *Id.* Like Mr. Lazar, Foy is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). The District Court released Mr. Foy with various conditions. Id. at ECF 47.

- *United States v. Clayton Ray Mullins,* 1:21-cr-35-EGS, Mullins was captured on publicly available video and body worn camera pulling an officer into the crowd of rioters, away from a group of officers defending the Capitol. *Id. at* ECF 1 (Complaint and Statement of Facts). Mullins, like Mr. Lazar, is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). Mr. Mullins was released on conditions. Id. at ECF 11.

Furthermore, and most importantly, as recently held by the D.C. Circuit, this Court must consider the specific circumstances that made the defendant's dangerous conduct possible. *Munchel*, 991 F.3d at 1283. ("The District Court also failed to demonstrate that it considered the specific circumstances that made it possible, on January 6, for Munchel and Eisenhart to threaten the peaceful transfer of power. The appellants had a unique opportunity to obstruct democracy on January 6…."). Thus, if this Court follows the directive to "consider [the threat] in context," "it follows that whether a defendant poses a particular threat depends on the threat identified and the resources and capabilities of the defendant." Mr. Lazar's was in the District on January 6th for a peaceful, political event led by the then-current President of the United States. Mr. Lazar does not pose a particular danger because he will not have the opportunity, capability or resources to be a threat to democracy or to the Capitol Police. His limited participation was fully bounded by the scope of the January 6th events.

Taken as a whole, the Government has not shown "by clear and convincing evidence that [Mr. Lazar] presents an identified and articulable threat to an individual or the community [so that] a court may disable the arrestee from executing that threat." *Id.* at 1282 (quoting *Salerno*, 481 U.S. at 751). The record does not support a finding, by clear and convincing evidence, that Mr. Lazar presents an articulable threat. To the extent that there is any evidence that Mr. Lazar is a threat (and counsel maintains that there is not), the Court can fashion a combination of conditions that would reasonably mitigate that threat.

### *Request to Stay Transport to the District of Columbia*

Mr. Lazar asks this Court to stay his transport to Washington, DC, pending the resolution of this Motion. With the Court continuing to conduct matters via virtual hearings, Mr. Lazar has been able to fully participate in all hearings from his current location in Philadelphia. Matters

will continue to be held remotely for the foreseeable future, so his presence outside of the jurisdiction presents no actual or practical obstacle to this case's progress. Mr. Lazar's entire life – his family and his businesses – are located in Pennsylvania. At the moment, he is able to see family when they visit and, to an extent, manage his business affairs. He would no longer be able to do either if he were transported to the District of Columbia. Mr. Lazar suffers from chronic back pain arising out of crushed and bulging discs in his spine, and transport and incarceration in the District of Columbia are likely to exacerbate the severity of Mr. Lazar's condition. Finally, transfer to the District of Columbia would necessitate Mr. Lazar being placed into a lengthy confining quarantine upon his arrival.

WHEREFORE, for the foregoing reasons, and any other reasons that the Court may deem just and proper, Mr. Lazar respectfully requests that the Court release him to electronic monitoring and/or home confinement pending the resolution of this matter, and that the Court stay the order for transport to Washington, DC, until the resolution of this Motion.

Respectfully submitted,

____/s/_____
David Benowitz
D.C. Bar No. 451557
Price Benowitz LLP
409 Seventh Street, NW
Suite 200
Washington, DC 20004
david@pricebenowitz.com
*Counsel for Samuel Lazar*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 24th day of September, 2021, I caused a true and correct copy of the foregoing Motion to be delivered via CM/ECF to Assistant United States Attorney Douglas Collyer, DOJ-USAO, Gateway Building, 14 Durkee Street, Room 340, Plattsburgh, NY, 12901.

                              ____/s/_____
                              David Benowitz