UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMUEL LAZAR,<br><br>Defendant | Case No. 21-cr-525 (ABJ)/(RMM) |

## SUPPLEMENT TO ORDER

The United States moved for the pretrial detention of Defendant Samuel Lazar, asserting that no combination of conditions would reasonably assure that the safety of the community if he were released. The United States bore the burden of proving, by clear and convincing evidence, that Mr. Lazar's release poses too great a danger to the safety of the community. As an initial matter, the undersigned concluded that Mr. Lazar is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because he has been charged with a crime of violence carrying a maximum sentence of 10 or more years; specifically, Mr. Lazar is charged with Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. § 111(a) and (b). *See e.g.*, *United States v. Klein*, --- F.Supp.3d ---, 2021 WL 1377128, at *7 (D.D.C. Apr. 12, 2021) (noting that the defendant was "eligible for pretrial detention due to the fact that he has been charged under 18 U.S.C. § 111(b) with a 'crime of violence,'"); *United States v. Padilla*, --- F.Supp.3d ----, 2021 WL 1751054, at *5 (D.D.C. May 4, 2021) (same) (citing *Klein*, 2021 WL 1377128, at *6).

The Court's analysis of the United States' motion for pretrial detention is guided by the Bail Reform Act and recent D.C. Circuit precedent interpreting that statute.  Under the Bail Reform Act, the Court must consider four factors to determine whether Mr. Lazar should be held without bond pending trial, each of which is discussed in detail below.  *See* 18 U.S.C. § 3142(g)(1)-(4).  The crux of the Court's analysis of whether Mr. Lazar should be held pending trial is whether he presents an ongoing risk of danger.  The Court's assessment of danger must be forward-looking, as recently emphasized by the D.C. Circuit in *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir.), *judgment entered*, 844 F. App'x 373 (D.C. Cir. 2021).  To detain a defendant on dangerousness grounds, the court must find that the defendant "poses a continued 'articulable threat to an individual or the community' that cannot be sufficiently mitigated by release conditions." *Klein*, 2021 WL 1377128, at *4 (quoting *Munchel*, 991 F.3d at 1280).  The *Munchel* panel noted that "the violent breach of the Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *Munchel*, 991 F.3d at 1284-85.  But the fact that a defendant posed a danger on January 6 does not, standing alone, justify pretrial detention.  The Court must find that the defendant "in fact pose[s] a threat of committing violence in the future," now that "the specific circumstances of January 6 have passed." *Id.* at 1284.

The Court can look to a defendant's past conduct to assess this prospective threat of danger to the community.  As noted in *United States v. Fairlamb,* "a defendant's history of violence offers some of the strongest evidence of his future dangerousness."  --- F.Supp.3d ----, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021) (citing other cases supporting this point).  However, when a defendant's conduct on January 6, 2021 "appears . . . to be an aberration," it can be more difficult to assess his future dangerousness.  *Klein*, 2021 WL 1377128, at *11.

2

On August 31, 2021, at the conclusion of Mr. Lazar's detention hearings, the undersigned ordered Mr. Lazar detained pending trial. This Supplement is included with the Order of Detention Pending Trial (AO Form 472) to provide a more detailed analysis of Mr. Lazar's arguments for his release and the four Bail Reform Act Factors.

### The Defendant's Evidence/Arguments for Release:

Mr. Lazar requested that he be released on conditions, to include home detention or home incarceration. He proffered that his proposed third-party custodian had been approved by the Pretrial Services Agency, and he emphasized that she was not currently employed, which would make her a suitable custodian.  In response to the government's argument that his proposed third-party custodian would not be able to control him as they would both be adults, Mr. Lazar emphasized that the point of a third-party custodian is to have an additional monitor of his behavior. Mr. Lazar highlighted that he has two children who live near him—as do numerous other family members—and that he is devoted to his family. He highlighted further that he is an entrepreneur and has his own business, and that he has a stable residence.  Mr. Lazar acknowledged that the United States did not appear to be arguing that he posed a risk of flight, but he emphasized that his passport is expired and that he could give up his passport as a condition of his release. He also emphasized that approximately seven months had elapsed between January 6, 2021 and his arrest, and that there are no allegations that he engaged in violence during that time or tried to get a firearm. He noted as well that post-January 6 conduct was one of the considerations addressed by the D.C. Circuit in *United States v. Tanios*. *See* 856 F. App'x 325, 326 (D.C. Cir. 2021).

Concerning his criminal record, Mr. Lazar highlighted that he has no felony convictions, and that as he is now 35 years old, he would have been about 18 in 2004 when he was convicted

of two misdemeanor offenses. He also proffered that he was only incarcerated for 45 days on those convictions,[1] rather than two years as his Pretrial Services Report appears to suggest. Mr. Lazar also emphasized that the conduct underlying his most recent conviction occurred six years ago.

As to the instant allegations, Mr. Lazar proffered that the first discharge of the chemical spray he was holding may have been accidental and the spray itself may have been blocked in part by the bullhorn he was holding. He also noted that the statements he made in an interview after his alleged assaults on law enforcement were the same day as the alleged assault, emphasizing that all of his alleged conduct occurred on one day, in the span of only a couple of hours.  As to the statements he made in the interview which was presented to the Court as Government Exhibit 2, counsel for Mr. Lazar proffered that people sometimes say things in the heat of the moment that they do not mean.  Mr. Lazar also highlighted that there is no evidence that he was linked to any extremist organization, emphasizing that that is a factor the D.C. Circuit relied on in *Tanios*. *See* 856 F. App'x at 326.

In addressing his "prospective threat to public safety" as required by *Munchel*, 991 F.3d at 1280, Mr. Lazar questioned the argument by the United States that ongoing rhetoric regarding whether former President Trump would be reinstated weighed in favor of his detention, averring that this argument was speculative and there is no evidence as to what Mr. Lazar may have heard or listened to, or what his feelings are now, post-January 6. He also proffered that his specific alleged actions on January 6 would be more probative as to his potential violence if he were appearing before the Court in the first week or so after the riot, as the Court would have nothing else to base its decision on with respect to predictive violence. Mr. Lazar emphasized that he is

---

[1] Or on just one of the convictions, it is not entirely clear.

appearing instead approximately seven months after January 6, and that although there were no specific indications that he was under investigation and it was not as though someone had been monitoring him since January 6, it was essentially an open secret that the United States was investigating those allegedly involved, yet he did not attempt to flee or obtain a firearm or other weaponry to protect himself. Instead, he was arrested at his home and was cooperative with law enforcement and made no attempt to resist arrest. More, Mr. Lazar argued that if he was the type of person the government alleges him to be, it would not have mattered if he had known he was under investigation, as the government had characterized him as just having that kind of aggression.

Mr. Lazar also addressed the United States' proffered evidence regarding his alleged possession of and posing with firearms during a rally in August 2020 and the posts he allegedly made on social media prior to January 6. As to the rally, he emphasized that there is no evidence that he fired a weapon and that it is not clear if the firearms were even loaded. Counsel for Mr. Lazar also proffered that although Mr. Lazar knew he was prohibited from purchasing firearms, he is not a felon and he may have been confused and not realized he was not allowed to temporarily hold or pose with one. Mr. Lazar emphasized further that the social media posts were prior to January 6 and that he was not the author/creator of them.

Last, in response to the Court's directive to explain how Mr. Lazar's case compares with two recent D.C. Circuit opinions—*Tanios*, 856 F. App'x 325, and *United States v. Khater*, 856 F. App'x 322 (D.C. Cir. 2021)—Mr. Lazar noted that Mr. Tanios and Mr. Khater were allegedly working together and he proffered that the bear spray that Mr. Khater used against law enforcement officers was stronger than the spray allegedly used by Mr. Lazar. *See Khater*, 856 F. App'x 322 (noting that the defendant "coolly walked up to police officers and assaulted them,

twice, with a chemical spray" and later referring to the spray as "bear spray"). He highlighted further that Mr. Khater and Mr. Tanios had conversations indicating coordination between themselves in the planning and preparation to use the spray, and he distinguished that from his accidental or spur-of-the-moment use of the spray.

**Nature and Circumstances of Offense(s):**

Mr. Lazar allegedly assaulted law enforcement officers during the January 6, 2021 riot at the United States Capitol Building while wearing tactical gear and appearing to encourage others in the crowd to take law enforcement officers' firearms. *See* Mot. for Detention Pending Trial at 9, ECF No. 6. While the attack appears to have lasted only seconds and there is no evidence that he was engaged in a prolonged physical struggle with law enforcement, the charged conduct is both serious and violent. Therefore, the nature and circumstances of the offense weigh strongly in favor of pretrial detention.

The undersigned was guided in the analysis of the nature and circumstances of Mr. Lazar's offenses by the factors identified by Chief Judge Howell in *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662 (D.D.C. Feb. 26, 2021). *Chrestman* identifies six "characteristics [that] have emerged as guideposts in assessing, under [this first factor,] the comparative culpability of a given defendant in relation to fellow rioters." *Id.* at 7. These are 1) "whether a defendant has been charged with felony or misdemeanor offenses;" 2) whether the "defendant engaged in prior planning before arriving at the Capitol;" 3) whether the defendant "carr[ied] or use[d] during the riot . . . a dangerous weapon;" 4) whether there is evidence that the defendant "coordinat[ed] with other participants before, during, or after the riot;" 5) whether the defendant "assumed either a formal or a de facto leadership role in the assault;" and 6) the defendant's "words and movements during the riot." *Id.* at *7-*8. Here, at

least four of these factors are present and support the conclusion that this first factor weighs in favor of Mr. Lazar's pretrial detention.

First, Mr. Lazar has been charged with multiple felonies. Second, the fact that he dressed in tactical gear and dark face paint and was armed with a chemical spray indicates at least some degree of advance planning. In addition, the United States proffered that Mr. Lazar re-posted content on social media encouraging people to "rise up" and "come armed" and that some people—referring to government officials—should be either executed or euthanized. Third, Mr. Lazar allegedly sprayed a chemical spray—a dangerous weapon—at law enforcement. Although Mr. Lazar argued that the first discharge of the spray may have been accidental, the video footage presented to the Court through Government Exhibit 1 strongly suggests that he purposefully discharged the chemical spray towards law enforcement the second time; indeed, Mr. Lazar made no argument to the contrary. As to the fourth and fifth *Chrestman* factors, although there is some evidence that Mr. Lazar encouraged others during the January 6 riot, the evidence does not support a finding that he coordinated with others prior to the riot or assumed a leadership role. Thus, the fourth and fifth *Chrestman* factors were either not present or so minimal that they do not support Mr. Lazar's detention. However, the sixth factor was present, as Mr. Lazar allegedly yelled "forward" and encouraged others to advance, and also encouraged the mob to attempt to take weapons from law enforcement by yelling "let's get their guns."

At bottom, Mr. Lazar's conduct demonstrated a complete disregard for the rule of law, culminating in an attack on law enforcement with a chemical spray. "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *Fairlamb*, 2021 WL 1614821, at *5.

### The Strength of the Government's Evidence:

The weight of the evidence also weighs in favor of Mr. Lazar's pretrial detention. The United States submitted two videos—Government Exhibits 1 and 2—which the undersigned viewed. Government Exhibit 1 was footage from a body-worn camera that shows Mr. Lazar brandishing and twice deploying a chemical spray in the direction of law enforcement who were attempting to prevent the mob of rioters from advancing beyond barriers. Although the undersigned agrees that the first discharge could reasonably be interpreted as accidental, the second discharge certainly appears to have been intentional, as Mr. Lazar can be seen turning around, raising the cannister, and deploying it towards the officers immediately after they had discharged a chemical spray in his direction. Although it is difficult to identify Mr. Lazar's voice among the mayhem, the United States also proffered that the video captures him yelling "forward" and using expletives to tell officers to "stand down." Government Exhibit 2 shows footage from later in the afternoon of January 6 in which Mr. Lazar stated "we maced them," in apparent reference to law enforcement officers. This overwhelming evidence of dangerous conduct on January 6 weighs in favor of Mr. Lazar's pretrial detention.

### The Defendant's History and Characteristics, Including Criminal History:

Mr. Lazar's history and characteristics are mixed, in that he has a number of both positive and negative attributes. He has a criminal record, which includes two prior misdemeanor convictions for criminal mischief in 2004, at least one of which carried a potential sentence exceeding one year. Although it is unclear how much time Mr. Lazar spent incarcerated on that offense, it appears that he was thereafter prohibited from possessing or owning firearms. He also has a prior conviction for making a false statement on a government form regarding purchasing a firearm; indeed, the United States proffered that this conviction arose from Mr. Lazar's

misrepresentation of his criminal history when attempting to purchase a firearm at a gun show. To his credit, though, Mr. Lazar's history does not include any felony convictions, and his criminal mischief convictions are dated and from when he was a young man.

Although not related to a conviction, the undersigned is also very concerned by photographs of Mr. Lazar which appear to show him posing with firearms—including assault weapons and a firearm that appeared to be loaded with a 30-round magazine—on a public street during a rally in August 2020. Although the United States proffered no evidence corroborating that the firearms were real or loaded, these photographs are significant because Mr. Lazar's criminal record barred him from possessing firearms, and he should have known that he was not permitted to even pose with them.

On the positive side, Mr. Lazar has strong family ties and community support. Indeed, counsel for Mr. Lazar presented a significant number of glowing character letters to the Court on his behalf. On balance, Mr. Lazar's positive and negative characteristics offset each other, making this factor neutral.

### The Defendant's Dangerousness/Risk of Flight:

Although a close question, Mr. Lazar's release "poses a concrete, prospective threat to public safety," *Munchel*, 991 F.3d at 1280; thus this factor also weighs in favor of his pretrial detention. As noted by Mr. Lazar, it is true that some time has passed since his alleged conduct on January 6, 2021. Even still, the undersigned finds that he poses a current threat. Photographs indicate that in August 2020, Mr. Lazar attended a rally during which he posed on a public street with a variety of firearms, and he allegedly re-posted content on social media that encouraged people to go to Washington, D.C. and to use violence. Thus Mr. Lazar's alleged attack against the democratic process at the Capitol does not seem to be an isolated incident that is "an

9

aberration in his life." *Klein*, 2021 WL 1377128, at *11.  The August 2020 incident is particularly troubling because it is more recent than the conduct underlying his prior criminal convictions. Many people maintain the belief that the current Administration is illegitimate, and thus the motivations appearing to underly the January 6 incident at the Capitol and Mr. Lazar's alleged actions have not fully abated. Mr. Lazar's alleged conduct during the riot shows the extent to which he was willing to use force and violence to support his political views, and no evidence was proffered showing that he has since been remorseful for his conduct.

### Conclusion

The undersigned concluded that the first, second, and fourth Bail Reform Act factors weighed in favor of Mr. Lazar's detention, and that the third factor was neutral. In weighing these factors and considering the potential for Mr. Lazar to present a danger to the community in the future, the undersigned found that the United States had demonstrated by clear and convincing evidence that Mr. Lazar's release posed too great a danger that could not be mitigated by any condition or combination of conditions of release.  The undersigned therefore ordered Mr. Lazar held without bond pending trial.

September 27, 2021

                                                                                         Robin M. Meriweather
                                                                                         United States Magistrate Judge