UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | ) |
|  | ) Crim. Action No. 21-0525 (ABJ) |
| SAMUEL LAZAR, | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On August 8, 2021, a group of media organizations (the "press coalition") filed an application for access to two video exhibits in this case. *See* Appl. for Access to Video Exs. [Dkt. # 18] ("Press Mot.") ¶ 5. On October 14, 2021, the press coalition supplemented that request with a second request seeking access to four additional videos. *See* Suppl. Appl. for Access to Video Exs. [Dkt. # 38] ("Press Suppl. Mot.") ¶¶ 6, 9. The press coalition argues that "the Video Exhibits are judicial records subject to the public right of access under the First Amendment and common law." Reply Mem. in Further Supp. of Press Mot. [Dkt. # 22] ("Press Reply") at 3. For the following reasons, both motions will be **GRANTED**.

### The Videos

The six videos sought are marked as government's exhibits 1 through 6. *See* Gov't's Am. Notice of Filing of Exs. Pursuant to Local Criminal Rule 49 [Dkt. # 37] ("Gov't's Am. Exs. Filing"). Each video depicts defendant on January 6, 2021, the date on which defendant is alleged to have committed the crimes charged in the indictment. *See* Indictment [Dkt. # 16].

- Ex. 1 is a video taken from a police officer's body-worn camera ("BWC"). It depicts defendant approaching a line of police officers who have formed a barricade between a group of people and the Capitol with bike racks. Defendant rattles a bike rack and then

1

    sprays a chemical irritant in close proximity to the officers on two occasions during this video.

- Ex. 2 is a video recording of a YouTube video posted by a third party. It depicts defendant discussing that day's events with other people.

- Ex. 3 is a video taken from a BWC in which defendant approaches the line of officers, shouts through a bullhorn, and points a cannister at them.

- Ex. 4 is a video taken from a BWC in which a large crowd has gathered in front of the line of officers. Defendant is depicted at the front of this group, shouting through a bullhorn.

- Ex. 5 is a video recording of a YouTube video posted by a third party. It depicts the events of Ex. 1, where defendant sprayed a chemical irritant in the vicinity of the line of officers, from a different angle.

- Ex. 6 is a video that the government states was produced by the New York Times. Mot. for Detention Pending Trial [Dkt. # 6] ("Deten. Mem.") at 9–10. It depicts various moments from January 6; at one point, defendant is depicted shouting into a bullhorn.

Exhibits 1 and 2 were played at the initial detention hearing held in front of a Magistrate Judge. Ex. List [Dkt. # 14] ("Ex. List 1"). Exhibits 3 and 4 were played during the detention hearing held by this Court on October 12, 2021. Ex. List [Dkt. # 35] ("Ex. List 2"). Exhibits 5 and 6 were produced to the Court for its consideration in connection with the pending bond motion pursuant to a minute order docketed on October 13, 2021. Gov't's Am. Exs. Filing ¶¶ 5–6. All six exhibits are specifically referenced and relied upon in the government's filings in this case; the detention memorandum includes screenshots from the videos and quotes what defendant allegedly said at the time, as captured in the videos. *See* Deten. Mem. at 4–10. The government's opposition to defendant's motion to reconsider bond also references the videos. *See* Opp. to Def.'s Mot. to Reconsider Def.'s Mot. for Conditional Release [Dkt. # 30] ("Gov't Opp.") at 3 ("Defendant bragged in a video about macing police, whom he referred to as 'tyrannical pieces of shit' and declared, 'There's a time for peace and a time for war.'").

## The Parties' Positions

The government has submitted two notices indicating that it does not object to release of any of the six videos.  *See* Gov't's Resp. to Min. Order Regarding Video Ex. Release [Dkt. # 19] ("First Gov't Response"); Gov't's Resp. to Min. Order Regarding Video Ex. Release [Dkt. # 39] ("Second Gov't Response").  Defendant does not object to the release of Ex. 2, "as it is already in the public domain."  Def.'s Resp. to Min. Order Regarding Video Ex. Release [Dkt. # 21] ("Def.'s Resp.") at 1.  But defendant does object to the release of Ex. 1, as

> 1) typically the video contained in Exhibit #1, obtained from body-worn camera (BWC) is disclosed by the government pursuant to a protective order that prevents dissemination to the press; 2) counsel is unaware of prior public disclosure of Exhibit #1; 3) the defense objects to the disclosure of Exhibit #1, and expands that objection to request that Exhibit #1 be sealed; 4) if the BWC footage were made public, the potential for prejudice to Mr. Lazar is great, particularly with respect to potential jurors if this case proceeds to trial.

*Id.* at 1–2.

Defendant did not respond to the supplemental press motion by the deadline set by the Court.  *See* Min. Order (Oct. 14, 2021) ("Any response to the Press Coalition's Supplemental Motion [Dkt. # 38] must be filed by October 18, 2021.").

## **Legal Standard**

As the D.C. Circuit has held, "[t]he common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020), quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017).  Although "not all documents filed with courts are judicial records," *id.* at 1128, quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013), documents and other materials filed in court "intended to influence the court"

are judicial records.  *Id.*; *MetLife*, 865 F.3d at 668 (holding that appellate briefs and appendices are judicial records because they are "intended to influence" the court and the court "ma[kes] decisions about them").  There is a strong presumption that the public has a right to access judicial records, *Leopold*, 964 F.3d at 1127–28, and applicants here assert that the parties cannot rebut that presumption as to these videos.  Press Suppl. Mot. ¶¶ 7–8, citing *Leopold*, 964 F.3d at 1127–28 and *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980).

In considering whether judicial records may be made public, courts weigh the following six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665 (applying the *Hubbard* test).  Judicial records may remain sealed "only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'"  *Id.* at 665–66, quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981).

## **Analysis**

There is no dispute here that the six videos are judicial records.  They were provided to the Magistrate Judge and then this Court as evidence to be relied upon when deciding whether to detain the defendant pending trial.  *See* Deten. Mem. at 4–10.  The Magistrate Judge and this Court specifically relied upon them when making their rulings.  The question, then, is whether release is justified under the *Hubbard* factors.

The first factor is "the need for public access to the documents at issue." *Hubbard*, 650 F.2d at 317.[1]  There is a significant public interest in accessing materials related to the investigation and prosecution of those allegedly involved in the events of national importance on January 6,[2] and in the grounds for, and legitimacy of, court rulings concerning individual defendants.  *See United States v. Jackson*, No. CR 21-MJ-115, 2021 WL 1026127, at *6 (D.D.C. Mar. 17, 2021) ("This violent challenge to a constitutionally mandated process is of deep national importance and public interest both as to the offense conduct and individuals involved, and the efforts of federal law enforcement agents, prosecutors and the courts in handling the cases arising out of the events on January 6th.").  In addition, as this Court noted in requiring the government to submit each video in the first place, viewing the videos is necessary to the evaluation of the veracity and strength of the government's public filings in the case.  *See E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 98 F.3d 1406, 1410–11 (D.C. Cir. 1996) ("[T]he fact that the exhibits and attachments were referenced in the public filings of the parties may create a public need for them.").  Therefore, the first factor weighs heavily in favor of release.

The second factor is the prior "public use of the documents." *Hubbard*, 650 F.2d at 318.  Several of these videos exhibits were already played at multiple detention hearings, while others are referenced extensively in multiple filings in this case, and all have been quoted by the parties and the Court at length.  *See* Ex. List 1; Ex. List 2; Gov't's Am. Exs. Filing ¶¶ 5–6; *see also* Deten. Mem. at 4–10; Gov't Opp. at 3.  While defendant belatedly requested in his August 28, 2021

---

[1]   The factors in *Hubbard* were listed with each factor as its own header.  The Court has altered these quotations only to remove capitalization.

[2]   As the D.C. Circuit has emphasized, "[i]t cannot be gainsaid that the violent breach of the Capitol on January 6 was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

response to the press coalition motion that Ex. 1 be sealed, *see* Def.'s Resp. at 1–2, at that point it had already been played in open court on August 11, 2021. *See* Ex. List 1; *see also* First Gov't Resp. at 2 ("The government submitted two videos to the Court at the hearing. Neither party sought a sealing order for the videos upon their submission."). And defendant did not renew his request when the video was played again at the detention hearing in front of this Court. *See* Second Gov't Resp. at 2 ("The government submitted four videos to the Court at the hearing and after the hearing. Neither party sought a sealing order for the videos upon their submission."). The exhibits have never been sealed. This factor also weighs in favor of release.

      The third factor is the "fact of objection and identity of those objecting to disclosure." *Hubbard*, 650 F.2d at 319. This factor takes into account any objection to disclosure, though an objection weighs more heavily when a "third party's property and privacy rights" are implicated. *Id.*; *cf. Jackson*, 2021 WL 1026127, at *7 ("[T]he only party to object here is the defendant, not any third party, [which] favors disclosure."). Defendant is the party who has lodged an objection to the release of Exhibit 1, and he plainly has a significant stake in the issue. His objection would therefore ordinarily carry some weight against release, but the strength of defendant's objection is diminished by the fact that he did not object to the display of the videos in open court. *See In re Application for Access to Certain Sealed Video Exhibits*, No. 21-MC-78, 2021 WL 2711706, at *5 (D.D.C. June 30, 2021) (finding it relevant that "Klein did not object to the videos or move to seal them during the hearing itself."). And defendant's objection is further weakened by the fact that he has not objected to the release of the Ex. 5, which depicts the exact same events as Ex. 1. So this objection factors into the analysis, but it does not weigh heavily against release of the only video in dispute.

The fourth factor is the "strength of the generalized property and privacy interests asserted." *Hubbard*, 650 F.2d at 320.  There is no property interest involved here, and defendant's objection is not centered around privacy; instead, he argues that "if the BWC footage were made public, the potential for prejudice to Mr. Lazar is great, particularly with respect to potential jurors if this case proceeds to trial."  Def.'s Resp. at 2.

This merges the fourth factor with fifth, which is arguably the most important in a criminal case:  the "possibility of prejudice."  *Hubbard*, 650 F.2d at 320.  While it will be essential that the courts be attuned to the possibility of juror exposure to pre-trial publicity in all of these cases, this defendant has simply objected summarily without providing any detail.  The Court finds that his concern is premature since no trial date has been set and it is unclear whether these particular videos will be viewed or specifically noted by potential jurors in this jurisdiction.  The defendant is one of hundreds alleged to have violated the law on January 6, and the material related to his case has become part of an extensive public record in which his case may have received some coverage in his local community.  But the defense has presented no evidence that would indicate that it has been a focus of national attention or that it has been featured in media outlets that serve the District of Columbia in particular.  More importantly, the jurors' exposure to pre-trial publicity and any potential bias for or against the defendant must and will be fully explored through a thorough *voir dire* process.  As other judges in this district have emphasized,

> any concern about potential taint of the jury pool by allowing public access to the Video Exhibits may be dismissed as premature, given that no trial date has been set and may be many months away, if no disposition short of trial is reached, and also because alternative remedies exist to ensure that defendant receives a fair trial, including a rigorous *voir dire*.

*Jackson*, 2021 WL 1026127, at *8 n.4.  Therefore, while the fourth and fifth factors do have some relevance to the determination, they do not bear heavily against release in this particular instance.

The sixth factor is "the purposes for which the documents were introduced." *Hubbard*, 650 F.2d at 321. "As the Video Exhibits were introduced for the Court's consideration on the matter of detaining defendant, the final factor weighs heavily in favor of disclosure." *Jackson*, 2021 WL 1026127, at *8, citing *Broad. Co.*, 653 F.2d at 620. Defendant has not presented any argument that the video exhibits were introduced for any improper purpose, and the Court has not been presented with any reason to believe that they were introduced for any reason other than to justify defendant's pretrial detention. As noted in connection with the first factor above, the public has a legitimate interest in assessing whether the government's motions, the defendant's objections, and the Court's rulings were based on an adequate foundation, and therefore, this factor points towards release as well.

## Conclusion

After consideration of all of the factors, and in the Court's discretion, the motions are hereby **GRANTED**. The government is **ORDERED** to make the six videos promptly available without restrictions by providing access using the "drop box" technical solution described in Standing Order 21-28, In re: Media Access to Video Exhibits in Pretrial Capitol Cases.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: October 22, 2021